UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNELL BRANTLEY,

        Petitioner,               Case Number: 2:09-CV-10129

v.                                     HON. GEORGE CARAM STEEH

CATHERINE BAUMAN,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Darnell Brantley has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is incarcerated at the Baraga Maximum Correctional Facility in Baraga, Michigan. In the petition, Petitioner challenges his convictions for two counts of assault with intent to murder, felonious assault, and possession of a firearm during the commission of a felony. He claims that he received ineffective assistance of trial counsel and that he was denied his right to a jury trial. For the reasons set forth below, the Court denies the petition and denies a certificate of appealability.

I.

Petitioner's convictions arise from two shooting incidents that occurred in the City of Detroit on December 5, 2005. Nikka Adams testified that, on that date, at about 6:00 p.m., she was at her home with her friend LaKeisha Laughlin and

Laughlin's seven-year-old step-son Edward Robinson.  An acquaintance she knew as Deon stopped by her home to purchase a DVD player.  While Deon was in her home, Petitioner, Damon and Donta Marshal (who were brothers) came to her home.  They were on the front porch with Adams when Deon exited the home.  Petitioner and Damon began to beat Deon.  A man from the neighborhood came to the house and shot a rifle near the men.  After firing six shots, the man ran away, and Petitioner and the Marshal brothers also fled.

At about 12:30 a.m., Adams saw Petitioner and the Marshal brothers approach her house.  Adams testified that the three men all pulled out handguns and began shooting at her house.  One of the bullets went into a dryer on her porch, another broke her front window, and the third ended up in her kitchen.  Adams ran inside.  Damon Marshal asked her about the "crack head they had just beat up."  Damon believed Deon was still in Adams' home.  Eventually, the men left and Laughlin called the police.

Adams then walked to Petitioner's grandmother's house, where Petitioner also lived.  Petitioner was not home, but his grandmother and some others were there.  Adams testified that she told everyone about the shooting, including Petitioner's grandmother.  When Adams left to return home, Petitioner ran up to her and the two began arguing with Petitioner accusing Adams of lying about whether the "crack head" was at her home.  When Adams turned to walk away, Petitioner shot at her twice, missing both times.  He then ran up behind her and

shot her in the back. Adams was hospitalized for six days.

Laughlin testified that she witnessed Petitioner and the Marshal brothers shoot at Adams' home. Some time later, Laughlin heard gun shots and heard Adams say that she had been shot. Laughlin saw Petitioner standing over Adams. He then fled toward his grandmother's house.

## II.

Following a bench trial in Wayne County Circuit Court, Petitioner was convicted of two counts of assault with intent to murder, felonious assault, and possession of a firearm during the commission of a felony. On June 14, 2006, he was sentenced to 125 to 180 months in prison for each of the assault convictions, two to four years in prison for the felonious assault conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals. He raised these claims:

   I.   Was appellant denied the effective assistance of counsel where his trial attorney failed to call a defense witness?

   II.  Was the appellant denied his constitutional right to a jury trial where the record fails to demonstrate a voluntary and understanding waiver of the right to jury trial?

Petitioner also filed a motion to remand for an evidentiary hearing on his ineffective assistance of counsel claim pursuant to *People v. Ginther*, 390 Mich. 426 (1973).

The Michigan Court of Appeals denied the motion for remand and affirmed Petitioner's convictions. *People v. Brantley*, No. 271677 (Mich. Ct. App. Sept. 20, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Brantley*, 480 Mich. 1033 (Mich. Jan. 22, 2008).

Petitioner then filed the pending petition for a writ of habeas corpus. The petition raises the same claims presented in state court.

### III.

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for

5

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d

6

358, 360-61 (6th Cir. 1998).

## IV.

### A.

In his first claim for habeas relief, Petitioner argues that his trial counsel was ineffective in failing to call his grandmother, Ceola Brantley, as a witness. He argues that Brantley would have impeached Adams' testimony that, on the night of the shooting, she spoke to Brantley about the shooting.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs claims of ineffective assistance of counsel. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To show a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith*, 539 U.S. 510, 521

(2003).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction [or sentence] resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010).

> [T]he *Strickland* standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S. at 689-90. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. . . . The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7,

117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at __, 129 S.Ct. at 1420. The Strickland standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at __, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, __ U.S. __, 131 S. Ct. at 788.

The Michigan Court of Appeals, specifically citing the *Strickland* standard, held that Petitioner failed to satisfy either prong of *Strickland*. The court reasoned:

> "Decisions regarding what evidence to present and whether to cal or question witnesses are presumed to be matters of trial strategy." *People v. Rockey*, 237 Mich. App. 74, 76; 601 N.W.2d 887 (1999). Likewise, decisions regarding how to cross-examine and impeach witnesses are matters of trial strategy. *In re Ayres*, 239 Mich. App. 8, 23; 608 N.W. 2d 132 (1999). A defendant may establish ineffective assistance of counsel based on defense counsel's failure to call witnesses only if the failure deprives the defendant of a substantial defense, *i.e.*, one that might have made a different in the outcome of the trial. *Id.* at 22. But this Court will not find ineffective assistance merely because a strategy backfires, or assess counsel's competence with the benefit of hindsight. . . .
>
> One of the victims, Nikki Adams, testified that after defendant and two accomplices opened fire on her house, she went to defendant's house to speak to Brantley. Defendant contends that counsel should have called Brantley to testify that although Adams came to her house, she never spoke to Adams. However, defendant has not shown that Brantley's testimony was admissible. Whether Adams spoke to Brantley at her home was not material to the issues to be determined in this case, and the general rule is that extrinsic evidence may not be used to impeach a witness on a collateral

9

> matter. . . . Furthermore, Brantley's proposed testimony would have confirmed Adams's testimony that she went to Brantley's house. Thus, it was reasonable to decline to call Brantley to impeach Adams on one point to avoid having her confirm Adams's testimony on another point. Additionally, it is not reasonably probable that impeaching Adams' testimony on this one minor point would have affected the outcome of the trial in light of the other evidence establishing defendant's guilt. Accordingly, defendant has not shown that counsel's failure to call Brantley constituted error or deprived him of a substantial defense.

*Brantley*, slip op. at 2.

Petitioner has failed to show that his attorney's conduct was not reasonable trial strategy. Brantley's testimony would not have refuted any of the incriminating testimony offered at trial. As noted by the court of appeals, the Brantley's testimony, instead, would have substantiated at least part of Adams' testimony. Defense counsel's decision not to call Petitioner's grandmother to testify was reasonable trial strategy. Moreover, Petitioner has failed to show any prejudice resulted from counsel's decision not to call Brantley. Accordingly, the state court's decision was not contrary to or an unreasonable application of Supreme Court precedent.

## B.

In his second claim, Petitioner argues that he did not validly waive his right to a jury trial because the trial court failed to explain to him what a jury trial is.

The right to a trial by jury is a fundamental right, a cornerstone of the American system of criminal justice, which is enshrined in the Constitution. *See*

*Duncan v. Louisiana*, 391 U.S. 145 (1968). It is a right that may be waived, if such waiver is knowing, voluntary and intelligent. *Patton v. U.S.*, 281 U.S. 276, 312-13 (1930). In *Lott v. Coyle*, 261 F.3d 594, 615 (6th Cir.2001), the Sixth Circuit set forth the level of knowledge a defendant must have to validly waive a right to a jury trial:

> A waiver may be voluntary, knowing, and intelligent if the defendant has a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of the waiver of that right. *See* [*United States v. Martin*, 704 F.2d 267, 273 (6th Cir.1983)]. Although a defendant need not have a detailed, technical knowledge of this right, "[a] defendant is [deemed] sufficiently informed to make an intelligent waiver if he was aware that a jury is composed of 12 members of the community, [that] he may participate in the selection of the jurors, [that] the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right." *Id.* at 273. We did not, however, adopt a mandatory rule requiring trial courts to interrogate defendants prior to accepting a jury trial waiver, but instead, offered a "suggestion" that district courts personally inform defendants of the "benefits and burdens of jury trials on the record prior to accepting a proffered waiver." *Id.* at 274.

*Id.* at 615.

The Michigan Court of Appeals held that Petitioner's waiver was knowing and voluntary and that the trial court was not required to explain and ascertain that Petitioner understood the meaning of a jury trial. *Brantley*, slip op. at 2. On habeas review, the Court is "required to give a high measure of deference to the state court's findings concerning the jury waiver, which are supported by the contemporaneous record in the case." *Spytma v. Howes*, 313 F.3d 363, 371 (6th

11

Cir. 2002). "[T]here is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver." *Spytma v. Howes*, 313 F.3d 363, 370 (6th Cir. 2002).

Petitioner does not dispute that he executed a waiver form. The trial court advised him of his constitutional right to a jury trial on the record and ascertained that Petitioner was not waiving that right pursuant to any threats or promises. Although the colloquy was not complex, it is sufficient to establish a voluntary and intelligent waiver. Therefore, Petitioner's claim is without merit and habeas relief is denied.

**V.**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted.  Therefore, the Court will deny a certificate of appealability.

## VI.

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

Dated:  April 7, 2011

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on April 7, 2011, by electronic and/or ordinary mail and also to Darnell Brantley at Baraga Maximum Facility, 13924 Wadaga Road Baraga, MI 49908-9204.

S/Josephine Chaffee
Deputy Clerk

---